**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| IN RE: STIMWAVE TECHNOLOGIES INC., *et al.*, | : | Chapter 11 |
| | : | |
| Debtors. | : | Case No. 22-10541-TMH |
| | : | |
| BRANDYN PERRYMAN and LAURA PERRYMAN, | : | |
| | : | |
| Appellants, | : | |
| v. | : | |
| | : | Civ. No. 24-1320-JLH |
| STIMWAVE TECHNOLOGIES INC., *et al.*, | : | |
| | : | |
| Appellees. | : | |

Brandyn Perryman and Laura Perryman,

    *Pro se appellants.*

Mette H. Kurth, PIERSON FERDINAND LLP, Wilmington, DE; Lynette R. Warman, PIERSON FERDINAND LLP, Dallas, TX,

    *Counsel to appellee, Province, LLC, Liquidating Trustee for the SWTI Liquidating Trust.*

**<u>OPINION</u>**

March 24, 2026

HALL, U.S. DISTRICT JUDGE

## I.    INTRODUCTION

This appeal, filed by *pro se* appellants Laura Perry and Brandyn Perryman (together, the "Appellants" or the "Perrymans") arises from the chapter 11 cases of Stimwave Technologies Inc. ("STI") and certain affiliates (together, the "Debtors") in connection with the Bankruptcy Court's November 21, 2024 *Findings of Fact and Conclusions of Law Relating to Liquidating Trustee's Objections to Claims 54 and 59* (Bankr. D.I. 1435; D.I. 1-1)[1] (the "Order") which disallowed and expunged two proofs of claim seeking allowance of approximately $1.2 million in prepetition wages and severance and also asserting indemnification rights.   Appellants have appealed the Order's expungement of Claim No. 54,[2] contending that the Bankruptcy Court's alleged "utter distain for *pro se* litigants overshadowed [its] ability to make rational, non-bias[ed] rulings" and that the Bankruptcy Court erred in numerous evidentiary and legal rulings.   The record tells another story altogether: that, at every stage of this proceeding, the Bankruptcy Court afforded the *pro se* Appellants substantial procedural latitude and deference, scrupulously applied the Federal Rules of Evidence and the Federal Rules of Civil Procedure, and exercised sound discretion in managing its docket, moderating discovery disputes, and controlling the admission of evidence.   As explained below, the Order will be affirmed.

---

[1] The docket of the Chapter 11 cases, captioned *In re Stimwave Technologies Inc., et al.,* No. 22-10541 (TMH) (Bankr. D. Del.), is cited herein as "Bankr. D.I. __."

[2] The Order also disallowed and expunged Appellants' Claim 59, but that portion of the Order has not been appealed.

## II.    BACKGROUND

### A.    The Parties

The record reflects that Laura Perryman founded STI and served as its President and Chief Executive Officer until her resignation on November 24, 2019.  On June 16, 2022, the Debtors filed their cases under chapter 11 of the Bankruptcy Code.  (Bankr. D.I. 1.)[3]  The Debtors confirmed a liquidating Chapter 11 plan that became effective on May 31, 2023, upon which substantially all of their remaining assets were transferred to the SWTI Liquidating Trust, which is charged with resolving all remaining claims asserted against the Debtors' estates and distributing the remaining assets, and for which appellee Province, LLC ("Province") has been appointed Liquidating Trustee (the "Trustee").  On March 6, 2024, Ms. Perryman was convicted in the United States District Court for the Southern District of New York of one felony count of conspiracy to commit wire fraud and health care fraud and one felony count of health care fraud in connection with an alleged scheme to create and sell a non-functioning dummy medical device for implantation into patients, resulting in millions of dollars in losses to federal healthcare programs.  *See USA v. Perryman*, Case No. 1:23-cr-00117-DLC (S.D.N.Y. Jun. 17, 2024), D.I. 137.

### B.    The Perryman Wage Claim

On September 16, 2022, Ms. Perryman filed Proof of Claim No. 54 ("Claim 54"), which sought, among other things, $1,218,819 in alleged unpaid salary, bonus, vacation pay, and severance pay, as well as unspecified indemnification (the "Wage Claim").  The Wage Claim has three essential components that are at issue in this appeal: (a) a claim for $818,819 in accrued salary, vacation pay, and earned bonuses; (b) a $400,000 severance pay claim arising from her assertion that she was

---

[3] Exhibits to Appellants' opening brief (D.I. 14-1) are cited herein as "Ex. __," and the appendix to the Trustee's answering brief is cited herein as "Appx. ___."

constructively terminated on December 21, 2019, without cause; and (c) a claim for indemnification related to unspecified expenses and losses purportedly arising from her role as an STI officer and director.

### C.      The Trustee's Objection to the Wage Claim and the Scheduling Order

On April 15, 2024, the Trustee filed its *Third Omnibus Objection to Claims (Non-Substantive)* (Appx. 582) (the "Omnibus Objection").  This included an objection to the Wage Claims because Ms. Perryman had not provided supporting documentation sufficient to establish the claims' *prima facia* validity and that, after reasonable efforts to research these claims in the Debtors' books and records, the Trustee was unable to find support for them.  (Appx. 571 ¶ 28, 582.)  The record reflects that the Bankruptcy Court set aside an entire day for the evidentiary hearing to consider all matters raised in the Omnibus Objection.  (Appx. 686–87 at 10:13–11:20.)  At the outset of the May 15, 2024 hearing, Ms. Perryman and her son, Brandyn (by then a co-holder of the claim by assignment) asserted that they had not understood the hearing would be evidentiary in nature and were prepared only to address certain objections—specifically, those relating to late-filed, duplicate, and amended claims—not "books and records" objections.  (Appx. 682 at 6:1–24.)  In response, the Bankruptcy Court explained:

> I did put aside the entire day for this case, just to make sure that there was all the time you needed, but what I'm also hearing from you, Ms. Perryman, is to properly put on your case, you're going to need to bring in some witnesses and you're not in a position to go forward on that today because that wasn't the type of hearing you were anticipating to occur today. . . . So, here's what I would like to do, then . . . . I would note that both, Messrs Perryman are self-represented, as is Ms. Perryman, and I . . . want to make sure that we have an opportunity for a full and fair hearing. . . . . So what I would suggest that we do, then, is . . . see if we can narrow the issues . . . and we'll set a follow-up hearing to go over any other evidentiary issues that the parties need to raise.

(Appx. 686–87 at 10:13–11:11.)  Ms. Perryman suggested that significant factual disputes would require extensive discovery, including depositions and document production, and the ability to call

witnesses. (*See* Appx. 685–86 at 9:15–10:12; Appx. 689–90 at 13:18–14:21.) The Bankruptcy Court accommodated Appellants' desire for a longer discovery period by continuing the evidentiary hearing by roughly four months, to September 10 and 11, 2024 (Appx. 784–85). Stressing the importance of having a clear and firm schedule and avoiding disputes about the timing or manner of discovery (*see* Appx. 785 at 16:20–25) the Bankruptcy Court directed the parties to prepare a detailed scheduling order, including deadlines and procedures for discovery, depositions, supplemental briefing, and other pre-hearing activities. (Appx. 785 at 16:14–20.) On July 15, 2025, the Trustee supplemented its Omnibus Objection (Bankr. D.I. 1233; Appx. 999) (together with the Omnibus Objection, the "Objections")).

The Trustee eventually sought the Bankruptcy Court's assistance in early July 2024 with respect to a scheduling order. (Appx. 794, 844.) After a discovery conference held on July 8, 2024, the Bankruptcy Court entered a stipulated scheduling order (Bankr. D.I. 1215) (the "Scheduling Order"). The record reflects that the Bankruptcy Court cautioned both parties that non-compliance with the Scheduling Order could lead to severe consequences, including sanctions, fee shifting, or even the disallowance of claims. (*See* Appx. 1536–46) ("7/11/24 Tr.") at 5:13–21.)

**D.     The Discovery Process**

The record further reflects that, after the entry of the Scheduling Order, the Bankruptcy Court continued to accommodate Appellants. Although discovery disputes continued through the date of the evidentiary hearing (*see, e.g.*, Appx. 1645), the record reflects that the Bankruptcy Court endeavored, through six separate discovery conferences, to ensure that Appellants had every opportunity to present their case in full so that its ruling would be based on a complete evidentiary record.

**1.     Discovery Requests Regarding a Rule 30(b)(6) Witness and Other Third-Party Witnesses**

Despite Appellants' representations to the contrary in their appellate briefing, the record reflects that Appellants voluntarily withdrew their request to depose a Trustee representative pursuant to Federal Rule of Civil Procedure 30(b)(6) and abandoned their efforts to depose non-party witnesses.  Appellants sought to depose the Trustee through various procedural avenues, ultimately focusing on a motion to compel Rule 30(b)(6) testimony.  (Appx. 842, 880, 889, 896, 934.)  The record reflects that disputes arose between the parties regarding the subject matter of that deposition, and at a discovery conference on July 8, 2024 (Appx. 942–83) ("7/8/24 Tr."), the Bankruptcy Court noted that the motion did not include a list of topics or subjects to be addressed (*id*. at 961–62).  The Bankruptcy Court carefully explained that such a list is important to ensure that the correct representative is presented, which is why the rules require a list of topics.  (*See id.* at 21:1–9.)  Both parties then presented their positions.  (*See id*. at 21:10–13; Appx. 22–23.)  The Bankruptcy Court observed that Appellants were *pro se* and were doing their best so a certain amount of informality was appropriate (*see id.* at 23:20–22), and that it appeared that counsel for the Trustee had proceeded on that basis.  However, the topics that had been informally shared were too broad to permit an adequate response.  (*Id*. at 22:15–25.)  The Bankruptcy Court asked Appellants to provide a more precise description of deposition topics, as required by the rules, and for the parties to work out an agreement.  (*See id.* at 24:6–18.)

The record reflects that the parties could not agree on a narrower list of topics, and Appellant opposed the designation of Regina Groves, STI's former CFO, as the Trustee's Rule 30(b)(6) witness.  (*See* Appx. 1787–1810 ("8/2/24 Tr.") at 10:17–21.)  At a further discovery conference on August 2, 2024, the Bankruptcy Court adopted as its Order the Trustee's proposed resolution: offering Ms. Groves as its witness and narrowing the list of position topics to those relevant to the Wage Claim. In response, Ms. Perryman stated: "Your Honor, I won't be holding a 30(b)(6) deposition."  (Appx. 1797 at 11:7–8.)

5

Appellants attempted to serve deposition notices and subpoenas upon various third parties, including certain employees of Curonix (which had purchased the Debtors' assets through a bankruptcy sale), including Aure Bruneau (Appx. 895) and Peter Bosca (Appx. 1641).  When informed, the Trustee's counsel contacted Akin Gump, counsel for Curonix, to verify their understanding, and Curonix's counsel responded that, to their knowledge, none of the proposed deponents had been properly served; therefore, they did not plan to respond to Appellants and the depositions would not go forward.  (*See* Appx. 1807 at 21:7–13.)  The Trustee's counsel relayed this information to Ms. Perryman.  (*See* Appx. 1805–07.)  The issues regarding third-party depositions were also raised during the August 2, 2024, discovery conference, and the Bankruptcy Court noted that if Ms. Perryman wished to seek relief as to the depositions, "she can do so in a procedurally appropriate way."  (Appx. 1807 at 21:14–17.)  Appellants issued additional subpoenas on July 29, 2024, for Andrea Trescot (Bankr. D.I. 1252), Curonix, LLC, (Bankr. D.I. 1253), Ashley LaPointe (Bankr. D.I. 1255) and Hailey Rooney (Bankr. D.I. 1258).  The record reflects that Appellants did not ask the Bankruptcy Court to compel any of the proposed deponents to attend depositions, did not file any motions to compel attendance, and that none of the proposed deponents were called to testify at the hearing.  Appellants asserted that the Trustee had interfered with third-party witnesses, but when pressed for evidence of such interference, Ms. Perryman responded: "I can't produce the evidence to you that shows this."  (Appx. 1807 at 21:19–24.)

### 2.    Appellants' Subpoenas

On July 12, 2024, the Trustee moved to quash a subpoena purportedly issued to JP Morgan Chase Bank, N.A. ("Chase Bank") by Appellants.  (Appx. 984.)  The Trustee asked the Bankruptcy Court to quash the subpoena on the grounds that the subpoena required: (a) the bank to comply at a location beyond the geographical limits of Fed. R. Civ. P. 45(c); (b) the disclosure of privileged or otherwise protected matters, in that it was seeking more than a decade of bank records

from 3 STI-related entities; (c) required disclosure of confidential commercial information, and (d) requested records not related to the claim. The Bankruptcy Court granted the motion.  (*Id.*)

### E.    Pretrial Conference and Rulings

The Bankruptcy Court scheduled a pre-trial conference to address certain remaining discovery and evidentiary issues, and this conference took place on September 10, 2024, immediately before the evidentiary hearing commenced.

### 1.    Appellants' Discovery Response Deficiencies

The Bankruptcy Court first considered the discovery deficiencies outlined in the Trustee's request for a pre-trial conference.  (Appx. 100–165.)  Counsel for the Trustee indicated that Ms. Perryman had not answered interrogatories seeking basic wage information (*see* Appx. 102–05) and had failed to produce core financial records—federal income-tax returns, Forms W-2, and Forms 1099 (*see id.*), and the source materials underlying a consulting report that she had frequently referenced (the "FTI Report")—all of which were necessary to fully evaluate her asserted Wage Claims (*see id.*). Although she eventually identified two individuals who had supplied information for the FTI Report (Appx. 103 at 27:18–20), she (a) admitted that she had been walled off from the accounting interface between those witnesses and FTI (Appx. 121 at 45:8–14); (b) initially invoked privilege over all related communications (Appx. 103; Appx. 115 at 39:2–6); (c) refused to identify any other participants, and (d) withheld the documents on which the report was based.  Thus, the Trustee did not have a full set of documents needed to evaluate her claims.

In addition, Ms. Perryman had not independently verified the authenticity or veracity of some documents, and there were inconsistencies among the documents that the Trustee could locate, the FTI Report, and the Debtors' tax returns.  (*See* Appx. 124–25). As a consequence, Ms. Perryman's documents were needed to confirm whether those in the Trustee's possession were correct, but she had not responded to the relevant interrogatories or produced the documents needed to establish the

amounts she had actually been paid.  (Appx. 120.)  In light of these omissions, the Trustee moved either to disallow the Wage Claims outright or, in the alternative, to have the Court draw an adverse inference from the missing evidence.  (*See* Appx. 105.)

In response, Ms. Perryman maintained that she had supplied all documents she believed relevant (*see* Appx. 111–13), admitted that she lacked complete access to FTI's work product and related correspondence (*see* Appx. 113 at 37:23–25; Appx. 115 at 39:15–18), and eventually offered to produce only her 2015 tax return (*see* Appx. 123 at 47:13–17).

The Bankruptcy Court explained that the purpose of discovery, by ensuring that all relevant evidence is before the Court, is designed to avoid exactly the problem that it now faced.  The tax returns, which Ms. Perryman had not produced, could have helped the Bankruptcy Court to determine the wages owed.  (*See* Appx. 126.)  The Bankruptcy Court declined, however, to strike the Wage Claim solely based on the discovery violations.  (*See* Appx. 127.)  Instead, it ruled that it would consider drawing an adverse inference from the failure to produce the tax returns.  (*See* Appx. 126–28.)

### 2.    Trustee's Electronic Document Production

Second, the Bankruptcy Court considered the issues raised by Appellants with respect to the Trustee's electronic document production.  (Appx. 105 at 29:20–25; Appx. 2110.)  The Scheduling Order required production, by August 16, 2024, of any requested documents not subject to objection. On August 18, 2024, the Trustee—subject to previously filed and served written responses and objections (Appx. 1754)—furnished more than 1,000 responsive documents, totaling over 12,500 pages, via a secure, password-protected online database.  (Appx. 106–07; Appx. 141 at 65:15–18.) The Trustee selected secure, electronic delivery after Appellants declined to execute a customary confidentiality agreement, necessitating a protective-order hearing under Local Bankruptcy Rule 9018-1. (Appx. 147–48.)  The documents produced were maintained electronically in the ordinary

course of business and were produced in that same form.  (Appx. 148 at 72:12–14.) Appellants contended that production was untimely, asserted that the database link was not accessible from Brandyn Perryman's equipment (*see* Appx. 141), and confirmed that Ms. Perryman did not try to access the information (Appx. 141 at 8–11) as she preferred receipt on a physical hard drive dropped in the mail (*see* Appx. 141, 144).  Ms. Perryman further asserted that certain of the Trustee's responses—*e.g.*, statements that information was unknown or would be supplemented—were inadequate.  As a sanction, Ms. Perryman asked the Bankruptcy Court to exclude "hearsay emails" proffered by the Trustee.  (Appx. 143.)

The Bankruptcy Court reviewed the Scheduling Order, the parties' correspondence, and the metadata associated with the database link. The Bankruptcy Court found that: (a) the Trustee's production occurred on August 18, 2024—not August 29, 2024, as Appellants had asserted (Appx. 153–154)—and therefore was timely (Appx. 154); (b) production of electronically stored information in electronic form was acceptable (Appx. 155–56); and (c) the method of production afforded sufficient access (*see id*.).  The Bankruptcy Court concluded that the Trustee's objections and answers, including statements that documents were unavailable or would be located, did not warrant sanctions.  Finally, it declined to exclude all emails, ruling instead that any hearsay objections would be addressed as and when the exhibits were offered at the evidentiary hearing.  (*See* Appx. 158.)

### F.    The Evidentiary Hearing

The evidentiary hearing was held September 10 & 11, 2024.  (*See* Appx. 077–289 (the "9/10/24 Tr.") and Appx. 290–530 (the "9/11/24 Tr.").)  The challenges Appellants raise on appeal— the majority of which lack any citations to the record or the transcripts of the multiple discovery hearings and the evidentiary hearing—can be grouped into overarching general allegations that the Bankruptcy Court abused its discretion in its evidentiary rulings, that the Trustee was not held to his burden of proof, and that Appellants did not receive fair consideration of their claims at trial based

on their *pro se* status.  The Trustee has provided a detailed summary of those proceedings, which the Court has carefully reviewed against the record as set forth below.

### 1.    The Trustee's Case

The Trustee's main witness was Jin Dong (Appx. 185), a director at Province who had worked there for approximately eight years (Appx. 190–91) and who had first been engaged by the Official Committee of Unsecured Creditors in the chapter 11 cases and later by the Liquidating Trust.  (Appx. 191.)  Brandyn Perryman moved to strike his testimony at the outset, asserting that Mr. Dong was a surprise witness and that Appellants never had an opportunity to depose him.  (Appx. 186–87.)  The Bankruptcy Court denied the motion.  (Appx. 190.)  The Bankruptcy Court agreed with the Trustee that Appellants had voluntarily withdrawn their Rule 30(b)(6) notice, thereby relinquishing any right to compel a corporate representative's deposition.  (Appx. 187–88, 190.)  The Bankruptcy Court also agreed that the Trustee had the right to call a representative, and that Mr. Dong had in any event been disclosed previously in connection with the Trustee's objection to Claim 59, another claim at issue in the hearing on the Omnibus Objection.  (Appx. 189–90, 540, 542.)

Mr. Dong explained that in the course of his duties he had investigated Claim 54. (Appx. 191–92.)  To do so, he reviewed Claim 54 and all attachments; the Debtors' and Trustee's claim objections and supporting documents; Appellants' responses; the Debtors' schedules, statements of financial affairs, audited financial statements, and other books and records (*see* Appx. 192–93, 3433); and communications with former officers and employees, including former CFO Regina Groves and former Controller Michelle Dorey (*see* Appx. 342), and former director Jeffrey Goldberg (*see* Appx. 344).  Mr. Dong testified that his investigation revealed that, from 2011 until her resignation in 2019, Ms. Perryman was in ultimate control of the Debtors' books and records, including accounting and finances, and transferred money to herself as she saw fit until she was put on leave. (Appx. 217, 223.)

Claim 54 asserted three essential components—unpaid wages, severance, and indemnification—and Mr. Dong addressed each in turn.

### a.      The Wage Claim

The record reflects that Mr. Dong testified about having located two fully executed employment agreements.  First, Mr. Dong identified the 2010 Neuro Micro Employment Agreement (Appx. 2297) (the "2010 EA").  The term of the 2010 EA agreement was stated to be a three-year term but also stated it would run from January 1, 2011, through December 31, 2014, with automatic one-year renewals.  (*See* Appx. 196.)  Second, Mr. Dong identified the 2014 Stimwave Employment Agreement (Appx. 2304) (the "2014 STI EA") (*see* Appx. 196–97), as well as an unsigned draft 2019 Stimwave agreement (Appx. 2844) (the "Draft STI EA") (*see* Appx. 193).

The 2014 STI EA was effective as of February 25, 2014, for a term of three years, with automatic one-year renewals unless terminated by one or both of the parties.  (Appx. 197–98.)  That agreement provided a $100,000 annual salary, eligibility for discretionary bonuses, and no commissions, unless modified in a signed writing.  (Appx. 198–99.)  Mr. Dong found no evidence in the Debtors' books and records of any termination or modification (*see* Appx. 198–99), no board minutes authorizing different compensation (*see* Appx. 223–24), and no Series D investor approval— which would have been required to implement the Draft STI EA (*see* Appx. 206–08).  *See also* Appx 2823 (STI Amended and Restated Certificate of Incorporation Dated May 13, 2019).  Mr. Dong testified that he searched for but did not locate any evidence that the Draft STI EA had ever been finalized or signed.  (*See* Appx. 203–06.)  Instead, he located evidence which showed that it was still subject to negotiation in the fall of 2019.  (*See id*.)  Ms. Perryman later admitted that the Draft STI EA was never signed.  (Appx. 483.)

Based on his investigation, Mr. Dong concluded that the 2014 STI EA governed from 2014 through Ms. Perryman's resignation in November 2019.  (Appx 208–09.)   By comparing that

11

agreement with the Debtors' books and records (Appx. 209)—including transfers to Ms. Perryman's personal accounts and available tax returns (Appx. 209–22)—Mr. Dong calculated that she had received roughly $2.2 million from 2011 to 2019, approximately $850,000 more than the $1.4 million she was contractually entitled to receive.  (*See* Appx. 222–23; *see also* Appx. 2899 (2013 Form 1099); Appx. 2904 (2012 Form 1099); Appx. 2909 (2015 Form W-2); Appx. 2912 (2015 STI Tax Return); Appx. 3004 (2016 Form 1099); Appx. 3013 (2016 STI Tax Return); Appx. 3075 (2017 Form 1099); Appx. 3083 (2017 STI Tax Return); Appx. 3154 (2018 Form W-2).)  Mr. Dong also located financial certifications signed by Ms. Perryman in 2018 and 2019 affirming that no salary, commission, or bonus was past due.  Mr. Dong testified that, from these facts, he concluded that no wages were owed. (*See* Appx. 224–31.)

Notably, the record further reflects that Mr. Dong also located a concurrent employment agreement between Ms. Perryman and an entity affiliated with the Debtors called Micron Devices LLC (Appx. 2796) (the "2014 Micron EA"), which was also effective as of February 25, 2014.  (*See* Appx. 199.)  That agreement also had a three-year term with automatic one-year renewals and similar provisions as in the 2014 STI EA discussed above.  (*See* Appx. 199–200.)  Ms. Perryman's compensation under the 2014 Micron EA was $240,000 annually.  (*See id*.)

### b.    The Severance Claim

Mr. Dong's testified that, in accordance with paragraphs 8 and 12 of the 2014 STI EA, severance was payable only if the employee resigned for "Good Reason," defined to include a material reduction in salary, duties, or work location after notice and an opportunity to cure, and only if the resignation occurred without the employee's consent (*see* Appx. 233–34.)  Ms. Perryman's resignation letter (Appx. 2859) reflects that she voluntarily agreed to resign.  The record reflects no contractual notice of any alleged breach, and no execution of the required release of claims.  (Appx.

234–35).  Accordingly, Mr. Dong determined that the prerequisites for severance were not satisfied and no amount was due.  (*See* Appx. 235 at 159:4–7.)

### c.    The Indemnification Claim

Mr. Dong testified to having reviewed, among other materials, the Debtors' Amended and Restated Certificate of Incorporation, Series D financing documents (Appx. 3250, 3315, 3373), a Delaware Chancery Court opinion (Appx. 2864), a December 20, 2019 board letter to Ms. Perryman (Appx. 3685), and other documents provided by Ms. Perryman.  (*See* Appx. 236–39.)  After reviewing the Delaware Chancery Court opinion, which was admitted into evidence as LT Exhibit 45, Mr. Dong concluded that the 2019 indemnification agreement upon which Ms. Perryman relied had been ruled a forged document; the December 20, 2019 board letter later denied indemnification on that ground; and the governing corporate documents required Series D investor approval for any indemnification due to the accounting irregularities at STI—approval that was never obtained.  (*See* Appx. 239 at 163:3–18.)  Mr. Dong testified that the Debtors had advanced approximately $2.3 million to Ms. Perryman before learning of the forgery (*see* Appx. 242), and the 2020 and 2021 audited financial statements showed a total claim held by the Debtors against Ms. Perryman in excess of $7.5 million. (*See* Appx. 3195 (2020 Audited Financial Statement) and 3222 (2021 Audited Financial Statement).) Based on the foregoing, Mr. Dong testified to his conclusion that, rather than being owed additional indemnity, Ms. Perryman owed money to the Debtors.  (*See* Appx. 242 at 166:21–25.)

In sum, based on his review of corporate records, financial statements, tax returns, board materials, and other documentary evidence, Mr. Dong concluded that no document supported any components of the Wage Claim 54 and that Ms. Perryman had in fact been overpaid during her tenure with the Debtors.

### 2.    The Shifted Burden

Following Mr. Dong's testimony, the Bankruptcy Court heard arguments from the parties as to whether the burden of proof had shifted.  Counsel to the Trustee argued that they had satisfied their burden of rebutting the *prima facie* validity attributable to Appellants' claim.  (*See* Appx. 350–56.)  The Bankruptcy Court found that the Trustee, through Mr. Dong's testimony and supporting documentation, had presented sufficient evidence to rebut the *prima facie* validity of the Wage Claim, and thus the burden of proof had shifted back to Appellants as the claimants to affirmatively prove Ms. Perryman's entitlement to any additional wages, severance, or indemnification by a preponderance of the evidence.  (*See* Appx. 364.)  The Bankruptcy Court made clear findings about the evidentiary burden, and the record reflects that the Bankruptcy Court carefully and repeatedly explained to Ms. Perryman the burden she would need to meet and the evidence she would need to present.  (*See* Appx. 357–65.)

### 3.    Appellants' Case

#### a.    Direct Examination

The record reflects that Appellants called three witnesses.  When the first, Ms. Perryman, took the stand, she did not ask to testify in the narrative, and instead proceeded by way of examination by her son, Brandyn Perryman.  (*See* Appx. 366–68.)  Ms. Perryman later tried to ask how she would get testimony in if Brandyn had not been there, and the Bankruptcy Court declined to provide parties with legal advice.  (Appx. 371 at 82:10–12.)  The Bankruptcy Court instructed her that witnesses may not question themselves.  (Appx. 371.)  Moments later, Ms. Perryman blurted out "Number 11" while no question was pending.  (Appx. 377.)  The Bankruptcy Court asked Ms. Perryman what materials she was referring to on the stand  (Appx. 305–08), and she produced a packet containing eighty-one numbered questions—precisely the questions Mr. Perryman was posing—along with handwritten answers (Appx. 378 at 89:5–11).  After a brief recess, the Court stated as follows:

14

THE COURT: Okay, here's what's going on. I believe you that you didn't know that there was anything wrong with this.  Okay, having said that, there is something very, very wrong with this. . . . . And if you were a lawyer, you would be sanctioned today. But I'm not doing that. . . . . But what we are doing is I'm admitting this document into evidence in this case, and we're furnishing copies to counsel for Liquidating Trustee . . . which is required under these circumstances, and I'll leave it at that. You can continue with the questioning.

MR. PERRYMAN: Thank you, Your Honor. Again, we apologize. We didn't mean to cause you –

THE COURT: I believe you. I believe you. Okay.

(Appx. 380 at 91:5–22.)

The record reflects that, as to the 2014 STI Employment Agreement, Ms. Perryman testified on direct examination at length regarding the wage component of Claim 54, including: conceding that she paid herself by transferring funds from corporate accounts rather than through ADP payroll (Appx. 369) and acknowledging that a 2020 counterclaim against the Debtors—voluntarily dismissed in 2022—was based on the 2014 STI Employment Agreement, which she signed, and which set her annual salary at $100,000 (Appx. 463–64).  She testified that she had "always thought" her base salary was $240,000 with a $100,000 bonus.  (Appx. 470–71.)  The record reflects, however, that Ms. Perryman offered into evidence no written modification, board minutes, or other corporate records to substantiate the higher amount.  (*See* Appx 468–71, 474.)  Ms. Perryman further admitted having received compensation under the 2014 Micron EA.  (*See* Appx. 397–98.)

The record further reflects that Ms. Perryman was permitted to testify at length in narrative fashion regarding multiple topics, including the alleged promise of severance (Appx. 373); alleged arrangements between STI and Micron Devices LLC regarding her services and receipt of payments (*see* Appx. 397–99); the alleged Micron Devices employment arrangement (Appx. 472–73); alleged board approval of her alleged salary (Appx. 476); Boston Scientific financing (Appx. 399, 410–13); and supposed removals of accrued compensation from the Debtors' books—a proposition she

15

supported by her general reference to the audited financial statements for 2020 and 2021, and unidentified "audit reports" (Appx. 405), yet introduced no supporting documents with respect to these topics. The record further reflects that Ms. Perryman also testified about her recollection of receiving 1099s and W2s from the Debtors, and about the alleged filing of corporate returns, but she again submitted no evidence in support of her testimony. (Appx. 396–97.)

As the record further reflects, Appellants offered into evidence a single slide from an August 15, 2018 STI board presentation—marked as LT 154—which listed her compensation as $240,000 for 2015–2018, increasing thereafter. (Appx. 409–10.) Ms. Perryman relied on the slide as proof that the board approved those figures (Appx. 410); however, she introduced no minutes or resolutions showing any such approval and admitted the slide could represent projections. (*See* Appx. 278, 413.) Finally, Gary and Ronald Perryman were called to testify. Garry Perryman testified briefly. (Appx. 524–25.) Ronald Perryman testified that he joined the Debtors in 2015, became Vice President of Operations, understood that Ms. Perryman had an employment agreement when he arrived, and knew she paid herself by bank transfer, although he had no role in those transfers. (Appx. 491–98.)

### b.      Cross-Examination

With respect to the severance claim, Ms. Perryman alleged that board chair Paul LaViolette orally promised her a twelve-month severance of $400,000 (Appx. 373–74). She admitted she neither provided the notice (Appx. 484 at 195:13–19) nor executed the release required by the 2014 STI Agreement (Appx. 483–84). Ms. Perryman testified that she was seeking severance based solely on Mr. LaViollette's alleged promise to pay her severance. (Appx. 309–14, 485.) Ms. Perryman submitted no evidence to corroborate her testimony that Mr. LaViollette had ever made this offer to her.

As to the indemnification claim, Ms. Perryman testified that she retained counsel in November 2019 to seek advancement and indemnification. (Appx. 367.) She further testified at length and in

16

narrative form that she originally signed an indemnification agreement in Spring 2018, which was somehow lost, prompting her to execute a replacement on November 11, 2019—the day she took leave as CEO.  (Appx. 374–75.)  She submitted no evidence in support of her testimony, which contradicts the Delaware Chancery Court opinion.

### c.    The Rebuttal Declarations

During the trial, the Bankruptcy Court discussed the terms of a rebuttal process with Ms. Perryman in the context of discussion of her last witness.  (Appx. 521–23.)  At the close of that testimony, the Bankruptcy Court stated that the opportunity to file rebuttal declarations would be available to all parties on an extended timeline to be filed by October 8, 2024.  (Appx. 525.)  The Bankruptcy Court advised Appellants that they would get a chance to file such declarations because they were *pro se*, but advised them it was not an opportunity to put in new issues not already raised. (Appx. 526.)

After the hearing, the Trustee submitted two rebuttal exhibits: a declaration by Regina Groves (Appx. 2228), and a declaration by Jeffrey Goldberg (Appx. 2232), followed by proposed findings of fact and conclusions of law (Appx. 2236).  Ms. Groves testified she was involved with the Debtors/successors for about five years, and had reviewed much information, including bank statements, and that she had discussed her review and shared many documents with Mr. Dong, to assist him in his review.  Mr. Goldberg testified he had been a director of STI for five years; that the 2014 STI EA was in effect from 2014 to 2019; that the Board did not approve any changes to it; and that he was unaware of any Board member promising Ms. Perryman severance on any terms.

Appellants also submitted two rebuttal exhibits: the "Affidavit of Laura Perryman in Support of Claim #54" (Appx. 2267) and the "Affidavit of Errata September 11, 2024 Testiomny [sic] of Ronald Perryman" (Appx. 2278), followed by Appellants' proposed findings of fact and conclusions of law.  The Bankruptcy Court entered an order *sua sponte* striking both of the Perryman affidavits

based on its finding that Ms. Perryman and Ronald Perryman, by their submissions, sought impermissibly to "add to or change their testimony following the close of their testimony." (Appx. 2280.)

On November 21, 2024, the Bankruptcy Court issued the Order expunging Appellants' Wage Claim. The Order contained detailed findings of fact and conclusions of law, holding that the Trustee had presented sufficient evidence—the Debtors' books and records, including payroll and tax records, as well as the Delaware Chancery Court opinion determining that the indemnification agreement on which Appellants relied was a "nullity"—to rebut the Wage Claim's *prima facie* validity. The Order further determined that Appellants had failed to carry their burden of proof in establishing the existence and amount of any unpaid wages, severance, or indemnification claims.

### G.    The Appeal

On December 3, 2024, Appellants filed a timely notice of appeal with respect to the Order. (Bankr. D.I. 1440.) The appeal is fully briefed. (D.I. 14, 16, 19.) No party requested oral argument.

## III.    JURISDICTION AND APPLICABLE STANDARDS

District courts have mandatory jurisdiction to hear appeals "from final judgments, orders, and decrees" in bankruptcy cases. 28 U.S.C. § 158(a)(1). "An order allowing or disallowing a claim is a final, appealable order." *In re Prosser*, 388 F. App'x 101, 102 n.1 (3d Cir. 2010) (quoting *Orsini Santos v. Mender,* 349 B.R. 762, 768 (1st Cir. BAP 2006)).

With respect to whether claims are properly allowed, the Court reviews the Bankruptcy Court's findings of fact for clear error and exercises plenary review over questions of law. *In re Millennium Lab Holdings II, LLC*, 591 B.R. 559, 570 (D. Del. 2018). When there are mixed questions of law and fact, the district court accepts the bankruptcy court's findings of "historical or narrative facts unless clearly erroneous, but exercise[s] 'plenary review of the trial court's choice and interpretation of legal precepts and its application of those precepts to the historical facts.'" *Mellon*

18

*Bank, N.A. v. Metro Commc'ns, Inc.*, 945 F.2d 635, 642 (3d Cir. 1991) (quoting *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–02 (3d Cir. 1981)). An abuse of discretion can occur "if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50* F.3d 253, 257 (3d Cir. 1995).

The Trustee objected to the Claims under section 502(b)(1) of the Bankruptcy Code, which provides that a court will disallow a claim to the extent it is unenforceable under applicable non-bankruptcy law. *See In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n.66 (3d Cir. 2004). The burden of proof for a claim filed in a bankruptcy proceeding "rests on different parties at different times." *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173 (3d Cir. 1992). Initially, the claim holder must establish the *prima facie* validity of the claim. *Id.* Bankruptcy Rule 3001(f) provides that a proof of claim executed and filed in accordance with the rules of procedure (*i.e.,* includes the facts and documents necessary to support the claim), constitutes *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f); *In re Samson Res. Corp.*, 569 B.R. 605, 615 (Bankr. D. Del. 2017); *In re F-Squared Inv. Mgmt., LLC*, 546 B.R. 538, 543 (Bankr. D. Del. 2016) ("Because a properly filed proof of claim is treated not merely as a document containing arguments and assertions, but as evidence that sufficiently supports its claims, a proof of claim that is filed 'in accordance' with Bankruptcy Rule 3001 serves to satisfy the claimant's initial burden of production.") The claim objector must then produce evidence that, "if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Allegheny*, 954 F.2d at 173–74. At that point, the burden reverts to the claim holder to prove the validity of the claim by a preponderance of the evidence. *Id.* at 174. The ultimate burden of persuasion rests on the claim holder. *Id.*; *In re Samson Res.*, 569 B.R. at 615.

19

## IV.   ANALYSIS

Construing Appellants' briefs liberally, Appellants identify six issues which may be broken down into their components as follows: the Bankruptcy Court erred by: (1) "blocking the Trustee deposition subpoena, all other subpoenaed witnesses"; (2) "quashing [Appellants'] subpoena for Debtor's bank statement"; (3) "allowing Trustee not to answer any interrogator[ies] or demand the production of documents per the agreed-upon schedule"; (4) "allowing the Trustee hearsay testimony at the hearing"; (5) "allowing non-deposed, paid consultant Trustee witnesses to provide unverified hearsay declarations taken as fact by the Court instead of oral testimony and bar [Appellants] from cross-examination"; (6) "not allowing narrative testimony from the pro se [Appellants] to detail the substance of the relevant facts of non-payment of wages and severance"; (7) "attempting to restate the agreed salary for the [Appellants] under FLSA and Florida Labor Statute 448 in violation of its powers and not just rule on the validity of the claim but restate the [Appellants'] agreed-to compensation unlawfully"; (8) in general, "unlawfully prejudic[ing] the pro se [Appellants] by denying a fair hearing through judicial misconduct and making an erroneous finding that rejected the creditor's claim for unpaid wages and severance."  (*See* D.I. 14 at 2–3.)

Appellants' many general and overlapping assignments of error to the Bankruptcy Court, which largely lack any citation to the record, fall into the following categories which are addressed in turn below: that the Bankruptcy Court (i) erred or abused its discretion with respect to several evidentiary rulings, (ii) erred as a matter of law in determining the validity and amount of the Wage Claim, and (iii) made rulings reflecting judicial bias which prejudiced Appellants as *pro se* parties.

### A.   Appellants Demonstrate No Error or Abuse of Discretion in the Bankruptcy Court's Evidentiary Rulings

The record reflects that the Bankruptcy Court correctly applied the Rules of Evidence and showed consistent consideration to the *pro se* Appellants throughout the discovery process and trial.

**1.    The Bankruptcy Court Did Not Err or Abuse its Discretion with Respect to Appellants' Subpoenas**

With respect to Appellants' assertion that the Bankruptcy Court erred in quashing their subpoena to non-party Chase Bank (Appellants' Issue #5), the ruling presents no reversible error.  As an initial matter, Appellants' subpoena contravened the territorial limitations of Federal Rule of Civil Procedure 45, which applies to this proceeding under Bankruptcy Rule 9016.  Rule 45(c)(2)(A) authorizes a document subpoena only if compliance is required "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  A subpoena requiring compliance beyond this territorial limit is subject to being quashed.  Fed. R. Civ. P. 45(d)(3)(A)(ii) ("[O]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c).").  Appellants do not dispute that Chase Bank's custodians are located well outside that 100-mile radius.

Appellants concede that they sought the bank records solely to preempt a potential "authenticity" objection at the hearing.  (*See* D.I. 14 at 26.)  Federal Rule of Evidence 902(11) permits self-authentication of business records through a custodian declaration, eliminating any need for a redundant subpoena to a financial institution.  Appellants introduced no bank statements with respect to the Wage Claim.  The record reflects that the Bankruptcy Court admitted a total of nine exhibits on their behalf—none of which were bank records—and Appellants point to no place in the record where the Bankruptcy Court excluded, rejected, or even ruled on any proffered bank statements.  Because no evidence was barred, Appellants suffered no prejudice.  The Bankruptcy Court therefore acted well within its discretion in quashing the subpoena to Chase Bank.

### 2.    The Bankruptcy Court Did Not Err or Abuse its Discretion in Ruling on the Discovery Dispute Concerning the Trustee's Document Production

With respect to Appellants' argument that the Bankruptcy Court abused its discretion in addressing disputes over the Trustee's document production (Appellants' Issue #5), nothing in the record supports their assertion that the Bankruptcy Court "allowed the Trustee not to answer any interrogatory questions" or "condoned non-production." (D.I. 14 at 9–10.)

Appellants' objections at the hearing concerned only the Trustee's production of documents through use of an electronic dataroom. Requests for production in adversary proceedings (and contested matters) are governed by Federal Rule of Civil Procedure 34. *See* Fed. R. Bankr. P. 7034, 9014(c), and 9016. The record reflects that the Trustee timely served responses and objections to Appellants' requests for production in accordance with Rule 34(b)(2), filed the responses on the docket, and produced responsive documents in a secure electronic data room prior to the hearing. The dataroom production satisfies Rule 34(b)(2)(E)(i)–(ii), which permits a responding party to produce documents "as they are kept in the usual course of business" and to produce electronically stored information in the form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." *Id.*; *In re Insulin Pricing Litig.*, No. 3080, 2024 WL 2808083, at *6 (D.N.J. May 28, 2024). While a request for production "may specify the form or forms in which electronically stored information is to be produced," "[a] party need not produce the same electronically stored information in more than one form." *Id.* To be "reasonably usable," the production of electronic discovery need not be in its native format or the form in which it is "ordinarily maintained." *Insulin Pricing Litig.*, 2024 WL 2808083, at *10 (citing *The Sedona Principles*, 19 Sedona Conf. J. 1, 174 (comment 12.b.i.)).

Under Rule 37(a)(3)(B), a party dissatisfied with interrogatory answers or document production must move to compel and certify that it has conferred in good faith with the responding

22

party.  The record reflects that Appellants filed no such motion.  Failure to move to compel constitutes a forfeiture of any complaint about the adequacy or timing of discovery responses.  *See e.g.*, *Yan v. Penn State Univ.*, 529 Fed. App'x 167, 170 (3d Cir. 2013); *AdvanSix Inc. v. Allianz Glob. Risks US Ins. Co.*, 2023 U.S. Dist. LEXIS 106263, *3–4 (D.N.J. Jun. 20, 2023) (stating that "the relevant portions of Rule 37(a) are triggered only when a party moves to compel").

Rule 34 expressly authorizes electronic production, and the 2006 Advisory Committee Notes emphasize that electronically stored information may be produced "by permitting access to electronically stored information."   Moreover, the Bankruptcy Court's evidentiary rulings are reviewed for abuse of discretion.  *In re Memorex Telex Corp.,* 242 B.R. 826, 830 (D. Del. 1999).  Having found the documents authentic, produced in native format, and made available well before trial, the Bankruptcy Court acted within its discretion in overruling Appellants' objections.

### 3.    The Bankruptcy Court Properly Denied Appellants' Motion to Strike Mr. Dong's Testimony and Overruled Hearsay Objections

With respect to Appellants' argument that the Bankruptcy Court erred and abused its discretion in allowing the Trustee to present "hearsay testimony" (Appellants' Issue #6), the challenge finds no support in the record or in the law.  Mr. Dong was not a surprise witness.  Rule 26 generally requires 30 days' notice of each witness unless the court orders otherwise.  Fed. R. Civ. P. 26(a)(3)(B).  Mr. Dong appeared on the Trustee's witness list in the prior evidentiary hearing on the Wage Claim, which was only continued at Appellants' request, and the Trustee again noticed him as a witness on September 4, 2024, a week before the contested hearing.  Such notice was reasonable in the context of ongoing disputes over discovery and depositions which continued right up until the day of the hearing.

Appellants argue that Mr. Dong was not designated as a Rule 30(b)(6) witness.  Appellants voluntarily withdrew their Rule 30(b)(6) notice to depose a Trustee representative, and they filed no

23

subsequent notice.   Having withdrawn the deposition notice, they cannot claim prejudice when the Trustee later called Mr. Dong.   Rule 30(b)(6) does not prevent a party from calling a witness at trial who was not previously designated under that rule; the rule simply governs corporate deposition discovery and does not restrict a party's ability to present any other competent witness at trial.   Finally, Appellants' brief does not identify any specific hearsay rulings to which they objected and preserved the issue for consideration on appeal.   (*See generally,* D.I. 14.)

### 4.    The Bankruptcy Court Did Not Err or Abuse its Discretion in Permitting the Rebuttal Declarations

Appellants fail to show that the Bankruptcy Court's allowance of post-hearing rebuttal evidence was an abuse of discretion (Appellants' Issue #3).   (*See* D.I. 14 at 16–20.)   Appellants argue that in doing so, the Bankruptcy Court permitted "non-deposed" witnesses to provide hearsay testimony and barring Appellants from cross-examining those witnesses.   (*See id.* at 16.)

Bankruptcy courts have broad authority to manage their dockets and to control the admission of evidence, and an evidentiary ruling will be reversed only for abuse of discretion.   The record reflects that, in light of time limitations, the Bankruptcy Court fashioned a balanced procedure that afforded both sides equal time to present initial testimony, followed by reciprocal rebuttal submissions, thereby promoting efficiency and fairness—the very objectives espoused in Bankruptcy Rule 1001 (providing that the rules "must be construed, administered, and employed by both the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding"). The record further reflects that the Bankruptcy Court explained, after the deliberations and discussions of the parties, its intention to permit the parties to exchange and file rebuttal declarations after the close of testimony, and Appellants did not object.  *See, e.g.*, *Solomons One, LLC v. Donnelly*, No., 15-1057, 2016 WL 1464548, at *7 (D. Md. Apr. 12, 2016) (holding bankruptcy court did not abuse discretion in considering post-trial declaration where party failed to object,

24

declaration resolved questions raised by the court, created no "undue prejudice" to opposing party, and declaration was not "especially important or probative"); *see also Ziccardi v. City of Phila.*, 288 F.3d 57, 65 (3d Cir. 2002) ("We generally do not address arguments that were not made in the district court and we therefore decline to consider the appellants' current argument as a ground for reversing the decision of the district court.").

Here, the Trustee submitted two rebuttal declarations: one by Regina Groves (Appx. 2228), and one by Jeffrey Goldberg (Appx. 2232). Both declarants were disclosed by the Trustee on its witness list before trial, and both were physically present in the courtroom during both days of the evidentiary hearing. The declarations themselves satisfy the foundational requirements of the Federal Rules of Evidence, and Appellants' hearsay arguments are unclear. Each declarant states the matters to which he or she has personal knowledge, in their capacity as an officer or employee of the Debtor, and each declaration is sworn under penalty of perjury in accordance with 28 U.S.C. § 1746. Ms. Groves' declaration states that: she has been a consultant to the Trustee since July 2024; at various times during 2019–2022, she served on the Reorganized Debtors' board of directors, and also served as their CFO and COO; she was familiar with Debtors' operations, business affairs, books, and records; had reviewed information including bank statements; and that she had discussed her review and shared many documents to assist Mr. Dong in his review. Mr. Goldberg's declaration states that he was a director of the Debtors for five years, the 2014 STI EA was in effect from 2014 to 2019, the Board did not approve any changes to it, and he was unaware of any Board member promising Ms. Perryman severance. The declarations reflect that they were submitted in further support of Mr. Dong's testimony. At the hearing, Mr. Dong testified extensively as to all aspects of his review, including his interactions with Ms. Groves and Mr. Goldberg, and was subject to cross-examination.

Appellants do not explain how they were unduly prejudiced by these declarations, or why they did not call the declarants for questioning if they believed additional live testimony was necessary.

Appellants' repeated challenges to the declarants' personal knowledge (*see* D.I. 14 at 23–29) are unsupported by the record. Declarants were formerly employed by the Debtors, and credibility determinations are committed to the trier of fact. *United States v. Marcavage*, 609 F.3d 264, 281 (3d Cir. 2010) ("We ordinarily defer to a trial court's factual findings, particularly when they are predicated on credibility determinations"). The Bankruptcy Court specifically found the declarants' testimony credible, and Appellants identify no evidence—much less clear error—undermining that finding.

Because Appellants failed to lodge a timely objection, cannot show that the Bankruptcy Court abused its discretion in permitting rebuttal declarations, and offer no basis to disturb the Bankruptcy Court's credibility determinations, their evidentiary challenge fails.

B.      **The Bankruptcy Court Did Not Err As a Matter of Law in Determining the Validity and Amount of the Wage Claim**

1.      **The Bankruptcy Court Applied the Correct Legal Standards and the Findings in Support of its Conclusions Are Well Supported By the Record**

The Bankruptcy Court applied the correct legal standards. (*See* Order ¶¶ 67–69.) As noted, when a claim objection is filed in a bankruptcy case, the burden of proof as to the validity of the claim shifts to different parties at different times. *In re Allegheny*, 954 F.2d at 173. Under Bankruptcy Rule 3001(f), the burden of proof first rests on the claimant to establish *prima facie* evidence of validity by submitting the supporting documentation required under Rule 3001. *See* Fed. R. Bankr. P. 3001. If the proof of claim does not include sufficient supporting documentation, the burden remains with the claimant to prove its claim by a preponderance of the evidence. *In re New Century TRS Holdings, Inc.*, 495 B.R. 625, 633 (Bankr. D. Del. 2013). Under section 502 of the Bankruptcy Code, a proof of claim is allowed unless a party in interest objects. 11 U.S.C. § 502(a). When an objection is filed, the burden shifts to the objecting party to present evidence to overcome the presumed validity of the claim that is "of probative force equal to that of the allegations of the

26

creditor's proof of claim." *New Century TRS Holding*, 495 B.R. at 633. If the objecting party presents evidence to overcome the *prima facie* validity of the claim, the burden reverts to the claimant to establish its claim by a preponderance of the evidence. *Id.* The burden of proof with respect to the claim is always on the claimant. *In re Allegheny*, 954 F.2d at 174.

The Wage Claim lacked supporting documentation required under Bankruptcy Rule 3001, and the Bankruptcy Court's determination that Appellants did not establish the Wage Claim by a preponderance of the evidence rests on factual findings supported by the record.

As to the first component of the Wage Claim, the only operative compensation agreements presented to the Bankruptcy Court were the 2010 EA and the 2014 STI EA, each of which set Ms. Perryman's base salary far below the $1.2 million asserted in her claim. (Order ¶¶ 71–74). Appellants' reliance on slides from a board presentation to show that her salary increased did not sustain her burden of proof, as those documents lacked any written board approval and could not vary the integrated written contracts. (*See id.* ¶ 74.) Evidence of payments actually received, on the other hand—including through her self-directed ACH transfers—support the finding that Ms. Perryman was paid at least $2,478,595.40 between 2011 and 2019, or roughly $1 million more than the maximum compensation authorized by the contracts. (*See id.* ¶¶ 78–79). Because Ms. Perryman repeatedly refused to produce her tax returns, W-2s, and 1099s, which were highly probative of the validity of this portion of her claim, the Bankruptcy Court imposed an adverse inference that the missing records would confirm she had been overpaid.[4] (*See id.* ¶ 77). These findings support the

---

[4] As the Bankruptcy Court explained in the Order, "Ms. Perryman controlled the books and records of the Debtors and transferred money to her personal bank accounts as she saw fit." (Order at 8 (citing 9/10/24 Tr. 141:2–7).) "Evidence in the books and records of STI of the compensation Ms. Perryman received from STI was limited and fragmented. As a consequence, the Liquidating Trustee requested Ms. Perryman's tax returns and other information in discovery, but Ms. Perryman did not produce the requested documents." (*Id.* at 8–9 (citing 9/10/24 Tr. 48:22–50:7).) As a result, the Court granted an adverse inference connected with documents that Ms. Perryman should have produced to demonstrate payments received from STI. (*Id.* at 9 (citing 9/10/24 Tr. 26:23–27:12, 50:8–51:10).)

disallowance of the salary component of the Wage Claim, and Appellants point to nothing in the record to show they are clearly erroneous other than Ms. Perryman's testimony that other unidentified agreements governed.  (*See id.* ¶ 80.)

The evidence before the Bankruptcy Court also established that severance was available only if Ms. Perryman resigned for "Good Reason" and also provided advance written notice, an opportunity to cure, and a signed release of claims.  (*See id.* ¶¶ 82–83).  The Bankruptcy Court found that none of these predicates for severance occurred; indeed, Ms. Perryman conceded she consented to being placed on paid leave and never executed the requisite release.  (*See id.* ¶ 83.)  Ms. Perryman's assertion that board chair Paul LaViolette orally promised severance was insufficient to sustain Appellants' burden of proof because (1) the 2014 STI EA barred oral modifications, and (2) Appellants adduced no evidence that Mr. LaViolette had authority to bind STI or that the Series D investors had approved any severance.  (*See id.* ¶ 84.)

Finally, the purported January 2018 Indemnification Agreement was previously declared a "nullity" by the Delaware Court of Chancery.  (*See id.* ¶¶ 85–86.)  Even apart from that ruling, any indemnification after April 2018 required consent by 68 percent of the Series D investors.  Appellants failed to sustain their burden, as they produced no proof that any such consent was ever obtained.  (*See id.* ¶ 86.) Having already advanced approximately $2.3 million to Ms. Perryman prepetition— and in absence of invoices or other proof of expenses—the Bankruptcy Court's decision to disallow the indemnification component in its entirety is well supported by the record.  (*See id.* ¶¶ 86–88).  In sum, Appellant have failed to identify any clearly erroneous finding of fact or any error in the Bankruptcy Court's application of well settled law to these facts.

## 2. The Bankruptcy Court Did Not "Re-State" Appellants' Compensation

---

*See, e.g.,* B*ull v. UPS,* 665 F.3d 68, 73 (3d Cir. 2012) (noting adverse inference sanction preferable to outright dismissal of an action).

With respect to their argument that the Bankruptcy Court "re-stated" Ms. Perryman's compensation in violation of federal and state law (Appellants' Issue #2), Appellants have mischaracterized the Bankruptcy Court's ruling. (*See* D.I. 14 at 13–15.)

The Bankruptcy Court has both statutory and constitutional authority over the allowance or disallowance of claims against the estate. 28 U.S.C. § 157(b)(2)(B). The claims allowance process often requires the Bankruptcy Court to construe the contracts giving rise to those claims. That is what occurred here. The uncontroverted evidence showed that any 2010 EA was superseded by the parties' 2014 STI EA, which governed through Ms. Perryman's 2019 resignation. (*See* Order at ¶¶ 68–73.) Florida law, which the contract selects, requires that where a contract is clear and unambiguous, it should be construed as written, and the court can give it no other meaning. (*See id*. ¶ 72 n.120 (citing *Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc*., 609 So. 2d 66, 68 (Fla. 4th DCA 1992); and *Hamilton Const. Co. v. Board of Pub. Instruction of Dade County,* 65 So. 2d 729 (Fla. 1953) ("[f]inding [the contract language] to be clear and unambiguous, we have no right … to give it a meaning other than that expressed in it. To hold otherwise would be to do violence to the most fundamental principle of contracts").) The Bankruptcy Court therefore properly rejected Ms. Perryman's attempt to supplant the written contract with her oral recollection and isolated board-presentation slides.

After reviewing the parties' evidence and drawing an adverse inference from the missing tax records as permitted under Third Circuit precedent, the Bankruptcy Court determined that Ms. Perryman had been "significantly overpaid" and was owed no additional wages or severance. (*See* Order ¶ 79.) Contrary to Appellants' argument, the Bankruptcy Court did not manufacture a new salary; it enforced the salary the parties themselves adopted in the 2014 STI EA.

Finally, although Appellants' argument is not entirely clear (*see* D.I. 14 at 13–15), neither the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"), nor Florida's statute governing general

29

labor regulations, Fla. Stat. § 448 *et seq.,* bar a bankruptcy court from determining the amount of a wage claim in accordance with the parties' contract.

### C. Allegations of Judicial Bias Resulting in Prejudice to Appellants Find No Support in the Record or the Law

#### 1. The Bankruptcy Court Did Not Prejudice Appellants by Foreclosing Narrative Testimony

Appellants argue that the Bankruptcy Court prejudiced them by declining to grant a blanket request for "narrative testimony" (Appellants' Issue #4). (*See* D.I. 14 at 20–22.) The record does not support this argument. Federal Rule of Evidence 611(a) vests trial courts with "reasonable control over the mode and order of examining witnesses and presenting evidence" so as to "make those procedures effective for determining the truth" and to "avoid wasting time." Fed. R. Evid. 611(a)(1)–(2). Appellate review of the Bankruptcy Court's rulings based on a permissible interpretation of the Federal Rules of Evidence is limited to the abuse of discretion standard. *In re Memorex Telex,* 242 B.R. at 830. A judgment should not be reversed if errors or defects do not affect the substantial rights of the parties. 28 U.S.C. § 2111; Fed. R. Civ. P. 61.

As an initial matter, Appellants cite nothing in the record to demonstrate that they requested—either in their written submissions or at the outset of the hearing—to dispense with the ordinary question-and-answer format contemplated by the Federal Rules of Evidence. Rather, the record reflects that they elected to proceed *pro se*, delivered opening argument, cross-examined the Trustee's witnesses, and called three witnesses of their own, including Ms. Perryman. Only after Ms. Perryman had already begun her own direct examination did she begin asking about whether she could present her case in the narrative. (*See, e.g.*, 9/11/24 Tr. at 156 ("Your Honor, may I say something to tell you about these exhibits?") The Bankruptcy Court reasonably continued with the conventional question-and-answer format. But even assuming this or another inquiry constituted a belated motion to proceed

by narrative testimony, the Bankruptcy Court was well within its discretion to deny or limit it at that stage of the proceeding.

Perhaps more importantly, the record reflects that, far from foreclosing narrative testimony, the Bankruptcy Court repeatedly allowed Ms. Perryman to testify in narrative fashion regarding a broad range of topics, including the alleged promise of severance (Appx. 373); alleged arrangements between STI and Micron Devices LLC regarding her services and receipt of payments (*see* Appx. 397–99); the alleged Micron Devices employment arrangement (Appx. 472–73); alleged board approval of her alleged salary (Appx. 476); Boston Scientific financing (Appx. 399, 410–13); and supposed removals of accrued compensation from the Debtors' books. The Bankruptcy Court further overruled numerous objections lodged by the Trustee to such testimony, and that it reduced the Trustee's reserved time for cross-examination and rebuttals (which necessitated the post-trial submissions) because it "is important to [the Bankruptcy Court] that [Appellants] be able to put on the testimony that they want to put on." (*See* Appx. 458.) Even if Appellants could demonstrate an error in any ruling, Appellants have shown no prejudice; rather, the record reflects that Appellants introduced every fact they now cite—non-payment of wages, severance, and associated damages—through a combination of their own testimony—frequently in narrative form—and that of their witnesses.

### 2. Appellants Have Failed to Show They Were Denied a Fair Hearing or Cite Any Evidence of Judicial Bias and Misconduct

Appellants assert that the Bankruptcy Court "belittled" them, deprived them of a fair hearing, and wrongly rejected their claims for unpaid wages and severance (Appellants' Issue #1). This Court has reviewed the transcripts of the various status, discovery, and pretrial conferences held by the Bankruptcy Court with respect to the Wage Claim, as well as the transcript of the evidentiary hearing. Appellants' contentions are belied by the record.

A finding of judicial bias requires a showing that the court displayed "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994) (discussing 28 U.S.C. § 455(b)(1) governing judicial recusal). "Judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Id.* (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)). Appellants complain of an adverse legal ruling. Appellants identify no transcript citation, order, or remark that arguably satisfies this stringent standard. Their argument therefore fails at the threshold.

Moreover, the transcripts of the various hearings demonstrate that the Bankruptcy Court went out of its way to accommodate Appellants' *pro se* status, despite their abuses, such as improper attempts at *ex parte* communications with chambers (Appx. 1798–1801), and glaring irregularities in their deposition notices, discovery responses, and manner of testimony (*see, e.g.*, Appx. 158, 357–65, 380, 964). Among other things, the Bankruptcy Court (i) granted Appellants' multiple extensions, (ii) scheduled the evidentiary hearing almost four months after the initial hearing, for which Appellants were unprepared to present their case, to ensure adequate preparation time, and (iii) clearly explained procedural requirements and burdens of proof before the trial began. Such measures comport with principles of affording *pro se* litigants a greater degree of leniency and holding them to less stringent standards. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013).

Appellants' attempt to convert the Bankruptcy Court's merits rulings into proof of bias lacks merit. After receiving live testimony and documentary evidence, the Bankruptcy Court entered detailed findings of fact, ultimately concluding that Appellants failed to carry their burden of substantiating the amounts they claimed to be owed. *Pro se* litigants must still "abide by the same rules that apply to all other litigants." *See Mala*, 704 F.3d at 245.

## V.    CONCLUSION

For the reasons above, the Order will be affirmed.[5]  The Court will issue a separate Order consistent with this Opinion.

---

[5] The Court need not consider the numerous procedural issues raised by the Trustee on appeal. (*See* D.I. 16 at 40–43.)

33